CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JAN 10 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Blaylock
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

**CHRIS VERNON BLEVINS, JR.**
    **Plaintiff,**

v.                                                **Civil Action No:**
                                                    **JURY DEMANDED**

**CABELA'S WHOLESALE, INC.**
**d/b/a "CABELA'S"**
    **Defendant.**

**COMPLAINT**

Comes the plaintiff, Chris Vernon Blevins, Jr., by and through his counsel, and for cause of action against the defendant, Cabela's Wholesale, Inc., d/b/a "Cabela's," would show this honorable Court as follows:

**STATEMENT OF DIVERSITY JURISDICTION**

The plaintiff is a citizen of Virginia. The defendant is a corporation incorporated under the laws of Nebraska with its principal place of business in Nebraska. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

**FACTUAL ALLEGATIONS**

1.    The plaintiff is Chris Vernon Blevins, Jr., a citizen and resident of Washington County, Virginia.

2.    The defendant is Cabela's Wholesale, Inc., a Nebraska corporation with its principal place of business in Nebraska, and does business as a retail store

known as "Cabela's" at 361 Cabela Drive in the City of Bristol, Virginia and other locations in Virginia and many other states.

3. The day after Thanksgiving Day is a popular shopping day known as "Black Friday."

4. Cabela's offered a 5:00 a.m. opening on Black Friday, November 24, 2017, and a promotion for the first 600 customers entering its Bristol, Virginia store.

5. The plaintiff and his girlfriend arrived at the store at approximately 4:00 a.m. on Black Friday, November 24, 2017, to take advantage of the promotion and buy snow boots for their five-year-old son. They were customer numbers 206 and 207 of the first 600 entrants and stood in line outside the store until the store opened.

6. At the store's opening, the plaintiff and his girlfriend entered the store in turn, obtained a shopping cart, located the snow boots for purchase near the rear of the store, placed the boots in their shopping cart, and joined the back of a long check-out line that curled and stretched from the rear of the store to the cashiers located just before the front exit of the store.

7. While the plaintiff's wife remained waiting in line with the shopping cart, the plaintiff went to the nearby hunting and firearms area of the store.

8.    While in the hunting and firearms area, the plaintiff noticed that a female uniformed police officer was observing him closely while he was looking at a Primos trigger stick tripod display.  He politely greeted the officer who responded, "I am just doing my job."  Plaintiff left the display, considered purchasing .410 shotgun shells and noticed a second female uniformed police officer was standing behind him observing him while he asked a store employee, whom he recognized as "Wayne," where the .410 shotgun shells were located.

9.    Plaintiff joined his girlfriend, and they continued to wait in the check-out line, paid the cashier in turn, returned the shopping cart, and proceeded to exit the store.

10.   As plaintiff stepped outside the store, and in view and hearing of the public and plaintiff's girlfriend, the two female uniformed police officers, whom plaintiff had seen observing him in the hunting and firearms area, without probable cause, grabbed the plaintiff, ordered him to get on the ground, and said he was being arrested for shoplifting.  Plaintiff responded that he had not taken anything and requested they examine the store video. One officer replied, and was heard by the public, that she did not have to examine the store video because that she had seen plaintiff shoplift, which was not true.  Plaintiff was then Tased repeatedly, immobilized, and brought to the ground by the multiple electric-shock barbed electrodes that shot out from the officers' Taser weapons and then handcuffed.

3

11. Plaintiff was then searched by the officers but found to have no store merchandise in his possession.

12. The officers then told plaintiff he had been seen earlier that morning exiting the store, going to his vehicle, and then returning back inside the store. This was not true. The officers had no information that plaintiff had earlier exited the store and returned, nor could they have, because he had not. The officers told plaintiff this lie as a pretext to obtain permission to search the vehicle in hope they might find contraband of any kind that would justify an arrest for any crime. Plaintiff told the officers that he had not been back to the vehicle since his arrival, which was true. The officers then asked him where his vehicle was parked. Plaintiff told the officers where it was parked. Without probable cause, and with the malicious intention of trying to discover contraband of any kind that would give probable cause for an arrest of the plaintiff for any crime and justify their actions, the officers continued with their detention of the plaintiff, walked him to the vehicle while he was still in handcuffs in the company of his girlfriend and in view of the public, and searched the vehicle. The officers found no stolen store merchandise or contraband of any kind in the vehicle.

13. A Cabela's store manager or other employee then advised the officers that the store video had been examined and that the plaintiff had not shoplifted.

14. One of the officers apologized to the plaintiff, but the other officer told the plaintiff he could no longer come back to Cabela's. Plaintiff was released from the handcuffs.

15. During all pertinent times and events described in paragraphs 3 through 14 above, the two female uniformed police officers were privately hired and paid by Cabela's for "Black Friday" and were acting as the servants, employees and/or agents of Cabela's.

## COUNT I - FALSE IMPRISONMENT/WRONGFUL DETENTION

16. The plaintiff incorporates herein the allegations in paragraphs 1-15 above.

17. The actions by the officers described in paragraphs 10-12 above were without probable cause, were an excessive use of force, and a false imprisonment and wrongful detention of the plaintiff by the defendant.

## COUNT II – ASSAULT AND BATTERY

18. The plaintiff incorporates herein the allegations in paragraphs 1-15 above.

19. The actions by the officers described in paragraphs 10-12 above were without probable cause, were an excessive use of force, and an assault and battery of the plaintiff by the defendant.

## COUNT III – DEFAMATION

20. The plaintiff incorporates herein the allegations in paragraphs 1-15 above.

21. The declarations by the officers as described in paragraphs 10-12 above that either expressed or implied that was a shoplifter were false, were made without reasonable grounds, and were a defamation of the plaintiff by the defendant.

## COUNT IV – NEGLIGENCE

22. The plaintiff incorporates herein the allegations in paragraphs 1-15 above.

23. The defendant electronically surveilling observed whether the plaintiff had concealed merchandise before check-out. The defendant negligently failed to alert the officers that plaintiff had not concealed merchandise as the officers suspected and should not be detained.

## DAMAGES – COMPENSATORY

24.  As a proximate result of the above-described tortious actions of the defendant, plaintiff has suffered physical and emotional injuries, pain, suffering, distress, anguish, embarrassment, humiliation and loss of reputation, and will continue to do so.

## DAMAGES – PUNITIVE

25.  The actions of the defendant as described in paragraph 12 above were actually malicious in that the officers knew that plaintiff was innocent of shoplifting, but continued his detention in hopes that they might search his vehicle and find evidence of some other crime to justify his arrest.

## RELIEF SOUGHT

The plaintiff, Chris Vernon Blevins, Jr., demands judgment against the defendant, Cabela's Wholesale, Inc., in the amount of $250,000 compensatory damages and $250,000 punitive damages, the costs of this action, and such other and further relief as this cause may require. A jury is demanded.

**CHRIS VERNON BLEVINS, JR.**

BY: _____
Timothy W. Hudson, Esq.
Attorney for Plaintiff
131 Eighth Street
Bristol, Tennessee 37620
(423) 968-3106
(423) 968-2108 (fax)
VSB No: 22929