# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **CHRIS VERNON BLEVINS, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00002 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CABELA'S WHOLESALE INC., D/B/A** | ) | By: James P. Jones |
| **CABELA'S, ET AL.,** | ) | United States District Judge |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Timothy W. Hudson, Bristol, Tennessee, for Plaintiff; Joshua M. Hoffman and Rebecca L. Dannenberg, Franklin & Prokopik, P.C., Herndon, Virginia, for Defendant Cabela's Wholesale, Inc. d/b/a Cabela's; Jennifer D. Royer, Royer Law Firm, P.C., Roanoke, Virginia, for Defendants Wendy Brewer and Patricia Eller.*

The plaintiff in this civil case claims that while visiting a local retail store, two police officers, working off duty as the store's security guards, falsely accused him of shoplifting, arrested and handcuffed him, and even though he did not resist, tased him several times, only finally releasing him after they could find no merchandise on his person or after a search of his vehicle, and the store's surveillance video footage exonerated him. The plaintiff sues the two officers and the retail store's owner seeking compensation for his physical pain and mental anguish resulting from the events, as well as for punitive damages. All three defendants have moved to dismiss the claims against them. For the reasons that

follow, I will grant the motions to dismiss as to the plaintiff's trespass claim and a portion of his constitutional claim against one of the officers, but will deny the motions to dismiss in all other respects.

I.

The plaintiff's Second Amended Complaint alleges the following facts, which I must accept as true at the present time for the sole purpose of deciding the motions to dismiss.[1]

Defendants Patricia Eller and Wendy Brewer are sergeants with the Bristol, Virginia, Police Department ("BVPD") and worked while off duty as security guards for defendant Cabela's Wholesale, Inc. ("Cabela's"), the owner of a retail sporting goods store in Bristol, Virginia. While working at Cabela's, they wore their BVPD uniforms and carried BVPD-issued badges, firearms, handcuffs, and Tasers.

On the 2017 Thanksgiving holiday shopping day known as Black Friday, Eller and Brewer were working at Cabela's and the plaintiff, Chris Blevins, was shopping with his girlfriend. It was a cold day, and Blevins wore a jacket and vest. He was carrying vehicle keys, a cell phone, a pack of cigarettes, and his wallet.

---

[1] Brewer and Eller have filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) asserting that the court lacks subject-matter jurisdiction because they are entitled to qualified immunity on the plaintiff's § 1983 claims. ECF No. 15. They have submitted declarations and other evidence in support of their motion. Because I conclude that qualified immunity is not a jurisdictional issue but an affirmative defense, see Part II, infra, I do not consider the additional evidence submitted by Brewer and Eller.

Upon entering Cabela's, Blevins and his girlfriend looked at hooded sweatshirts at the front of the store, then went to the back of the store and, with the help of a sales associate, obtained a pair of children's snow boots and placed them in their shopping cart. They joined the long line for the cashiers. While his girlfriend waited in line, Blevins went to the water fountain and then stepped outside to see if the coffee and doughnuts Cabela's had been offering to customers were still available. Seeing that there were no more refreshments outside the store, Blevins came back inside and used the water fountain again. He then proceeded to the firearms area of the store to look for shells for his son's small shotgun.

He noticed a partially packaged display model of a tripod. While a customer couple was handling the display model, the legs that were protruding from the packaging fell off. Blevins and the other customer remarked that the tripod was cheaply made. Blevins picked up the tripod and tried to reattach the legs, but he was unable to do so and left it. He then noticed that Eller was standing near him and watching him. He greeted her and she responded that she was just doing her job.

Blevins walked away from the tripod display and noticed a backpack that was on sale. He picked it up but decided not to buy it and put it down. He went to the customer service desk to ask where a particular kind of ammunition was located. He recognized the associate at the desk as a former coworker. The

associate led him to the ammunition. Blevins noticed that Brewer had been following him.

Blevins picked up the shells he wanted to purchase and rejoined his girlfriend in the checkout line. He used his cell phone to research whether the shells cost less at another retailer. They did, so he removed the shells from the cart and set them aside. He again noticed that Eller and Brewer were watching him. He removed his jacket and vest from the cart and put them back on. He gave his girlfriend some money and a coupon to purchase the snow boots.

A plainclothes asset protection employee, Eric Turner, was standing with Eller and Brewer. Eller told Turner and Brewer that she thought she had seen Blevins conceal ammunition. Turner asked his boss, Brad Mullins, to come to the checkout area because he, Brewer, and Eller had decided to detain Blevins.

While his girlfriend completed their purchase, Blevins walked to the front of the store to return their shopping cart. He stepped outside the store, and Eller, Brewer, and Turner followed him. Eller grabbed his arm from behind, told him he was under arrest for shoplifting, and instructed him to put both hands behind his back. Blevins jerked his left arm back, looked over his shoulder to see who had grabbed him, and stated he had not shoplifted. He told the officers to look at the surveillance video. He did not flee or indicate that he was going to flee. Brewer told Blevins that he was going to be tased, and she tased him using the Taser's

"drive-stun" mode while she and Eller took him to the ground. The Taser, when used in this mode, is designed to inflict pain. Blevins was tased at least once more while on the ground and was then handcuffed so tightly that his wrists were injured. The shocks left lesions on his back. Eller told Blevins she did not need to look at the surveillance footage because she saw him shoplift.

The officers then searched Blevins and found no store merchandise on his person. Mullins arrived and Blevins asked him to review the surveillance footage. Mullins said he would, but he did not instruct the officers to release Blevins while he did so. Brewer told Blevins and his girlfriend that she had seen Blevins exit the store and go to his vehicle multiple times, which was not true. According to Blevins, Brewer made this statement so that he would consent to a search of his vehicle, hoping that the officers might find something in the car to justify his arrest. Blevins told the officers that he had not returned to his vehicle since he arrived at Cabela's.

The officers asked where the vehicle was parked and insisted that they be allowed to search it. Brewer had the car keys in her possession and refused to return them to Blevins or his girlfriend. Blevins and his girlfriend gave consent to the search request with the hope that the officers would return the car keys, remove Blevins' handcuffs, and allow them to leave. Brewer thoroughly searched the vehicle and found no store merchandise or other contraband.

Mullins called Brewer to tell her that the surveillance footage showed that Blevins had not shoplifted. He instructed her to release Blevins but to inform him that he was banned from Cabela's. A police transport vehicle arrived on the scene, but Brewer sent it away. One of the officers apologized to Blevins, but the other told him he could not return to Cabela's due to his behavior. They then persistently asked him to acknowledge that they had not done anything wrong. He so acknowledged, but only to get them to remove the handcuffs. He was then released and allowed to leave.

Brewer, Eller, and Turner were required by Cabela's to complete statement forms, which they did. Brewer and Turner omitted from their statements that the plaintiff had been tased and his vehicle had been searched. Brewer and Eller wrote that they decided to detain Blevins because Eller saw him conceal an item in his jacket pocket while in the check-out lane. A local newspaper quoted Mullins as stating that Blevins had done nothing wrong and that Mullins had seen nothing suspicious.

Brewer and Eller were privately hired by and paid by Cabela's for the work shift during which this incident occurred. There was no extra-duty or off-duty employment agreement between Cabela's and the City of Bristol. The officers were subject to the instruction, management, and control of Cabela's. "They followed the orders of Cabela's as to whether or not to detain suspected shoplifters,

continue detention, and were given the authority to ban a customer from the store if directed by management." Second Am. Compl. 13, ECF No. 8. "The City of Bristol Virginia did not adopt an ordinance, as permitted by Code of Virginia §15.2-1712, which would permit off-duty police officers to accept private employment for the performance of official duties." *Id.* at 14.

Neither Brewer nor Eller initially filed a police incident report with the BVPD. Brewer did not file the required use-of-force report regarding the use of her Taser on Blevins. The newspaper quoted BVPD Lieutenant Charles Robinette as stating that the BVPD had no knowledge of the incident or use of the Taser until it was reported in the newspaper. The article also reported that Robinette stated that there are generally repercussions for failure to file the required reports. BVPD has launched an internal investigation into the incident.

BVPD supervisors ordered Eller and Brewer to file the required reports after this lawsuit was filed. Brewer wrote that she twice tased Blevins to coerce compliance with her commands to show his hands. She checked a box indicating that Blevins had been under the influence of alcohol or drugs.

Based on these factual allegations, Blevins asserts the following claims:

1. Count I: False Imprisonment/Wrongful Detention against all defendants;

2. Count II: Assault and Battery/Excessive Use of Force against all defendants;

3. Count III:  Defamation against Brewer and Eller;

4. Count IV:  Trespass against all defendants; and

5. Count V:  42 U.S.C. § 1983 claims against Brewer and Eller based on alleged violations of the Fourth and Fourteenth Amendments.[2]

The pending Motions to Dismiss have been fully briefed and are ripe for decision.[3]

## II.

Brewer and Eller have jointly filed two separate motions to dismiss, one pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting the bar of qualified immunity, and one pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Second Amended Complaint fails to state any viable claim against them.  In support of their Rule 12(b)(1) motion, they cite several non-controlling cases in which courts appear to have considered the issue of qualified immunity as a challenge to subject-matter jurisdiction, and they urge me to do the

---

[2]  The Second Amended Complaint alleges that Brewer and Eller violated the plaintiff's constitutional rights through their "excessive and unreasonable use of force, assault and battery, defamation, trespass, and unreasonable search and seizure of the plaintiff and his tangible personal property."  Second Am. Compl. 18.  I will construe Count V as asserting a claim of unreasonable seizure in the form of an arrest without probable cause, an excessive force claim, and an unreasonable search claim.

[3]  I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

same here. *See, e.g.*, *Herring v. Cent. State Hosp.*, No. 3:14–cv–738–JAG, 2015 WL 4624563, at *1 (E.D. Va. July 29, 2015); *Dance v. City of Richmond Police Dep't*, No. 3:09-CV-423-HEH, 2009 WL 2877152, at *2 (E.D. Va. Sept. 2, 2009). However, as Brewer and Eller acknowledge, I have previously held that qualified immunity is not a jurisdictional issue and should instead be considered under Rule 12(b)(6). *Fletcher v. Brown*, No. 2:15CV00015, 2016 WL 1179226, at *2 n.1 (W.D. Va. Mar. 24, 2016). Qualified immunity is an affirmative defense. *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016). I again conclude that Rule 12(b)(6) is a more appropriate vehicle for addressing a claim of qualified immunity, and I will therefore treat the Motion to Dismiss Pursuant to Rule 12(b)(1) as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. . . ." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). In ruling on a motion to dismiss, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must view those facts

in the light most favorable to the plaintiff, *Christopher v. Harbury,* 536 U.S. 403, 406 (2002).  I will apply this standard to all of the motions to dismiss presently before the court.

*A.  § 1983:  State Action.*

Eller and Brewer contend that the plaintiff has not alleged that they were acting under color of state law during the incident, as required for a claim under § 1983.  They point to the plaintiff's allegations that they were employees of Cabela's and were subject to the "instruction, management, and control" of Cabela's.  Second Am. Compl. ¶ 8, ECF No. 8.

A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), the Supreme Court set forth the general framework for determining whether a party is acting under color of state law for purposes of § 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . .  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937.

In *Griffin v. Maryland*, 378 U.S. 130 (1964), the Court considered whether a sheriff's deputy working as a private security guard at an amusement park was a state actor. The deputy arrested two black men for trespassing because the park was segregated and did not allow black people, and the two men refused to leave when directed to do so. The Court held that the deputy was a state actor. *Id.* at 137. The Court reasoned:

> [The deputy] — in ordering the petitioners to leave the park and in arresting and instituting prosecutions against them — purported to exercise the authority of a deputy sheriff. He wore a sheriff's badge and consistently identified himself as a deputy sheriff rather than as an employee of the park. Though an amended warrant was filed stating that petitioners had committed an offense because they entered the park after an 'agent' of the park told them not to do so, this change has little, if any, bearing on the character of the authority which [the deputy] initially purported to exercise. If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law.

*Id.* at 135.

Since *Griffin* was decided, the Fourth Circuit has issued several relevant opinions. In *Robinson v. Davis*, 447 F.2d 753 (4th Cir. 1971), the defendants were college security officers who wore town police uniforms. They allegedly detained and questioned the plaintiff, a student, regarding drug use. The Fourth Circuit held that this was not state action. *Id.* at 759. The court stated:

> Defendants in the instant case were not performing any duty imposed upon them by state law nor did they make any 'pretense' that

they were acting under state law; they were working for the College. While the defendants . . . wore their garb of policemen they had been instructed not to make any arrests.

*Id.*

In *Revene v. Charles County Commissioners*, 882 F.2d 870 (4th Cir. 1989), an off-duty deputy sheriff driving his own vehicle had followed a man, gotten into an altercation with him, and shot and killed him. The district court granted the defendant's motion to dismiss on the ground that the plaintiff had not pleaded facts showing state action. *Id.* at 781. The Fourth Circuit overruled the dismissal of the § 1983 claims. *Id.* The court analyzed the issue as follows:

The "admission" in the complaint that [the defendant] was off duty, out of uniform and operating his own vehicle at the time of the shooting incident is, contrary to the district court's apparent view, not dispositive. While it certainly is true that "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983," *Rogers v. Fuller*, 410 F. Supp. 187, 191 (M.D.N.C. 1976) (quoting *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975)), the lack of the outward indicia suggestive of state authority — such as being on duty, wearing a uniform, or driving a patrol car — are not alone determinative of whether a police officer is acting under color of state law. *Robinson v. Davis,* 447 F.2d 753, 759 (4th Cir. 1971); *Fuller*, 410 F. Supp. at 191. . . . Rather, the nature of the act performed is controlling. . . . The act therefore must be carefully scrutinized to determine whether an officer, when either on or off duty, is acting under color of state law. . . . *See also Payne v. Government of District of Columbia,* 559 F.2d 809, 825 n.9 (D.C. Cir. 1977) ("The circumstances surrounding the use of a service revolver, rather than the mere fact of its use, have constitutional relevance. . . . Surely one could not reasonably maintain that an off-duty police officer whose revolver accidentally discharged and hurt someone was acting under color of governmental authority").

*Id.* at 872–73. Maryland law provided that officers were considered to be on duty 24 hours per day and had a responsibility to take appropriate police action even when not working a shift. The Fourth Circuit held that had she been given the chance to proceed with her claim, the plaintiff might have been able to establish that the defendant officer had been acting under color of state law when he shot the decedent. *Id.* at 873.

More recently, in *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993), a police officer worked as a private security guard for Pizza Hut when he was off duty. He did not wear a uniform. During his security guard shift, while attempting to arrest someone for reckless driving, he drew his gun and stated that he was a police officer, but he did not show his badge. He was hit by the car and discharged his weapon while on the hood of the car, shooting the plaintiff. The district court found there was state action. *Id.* at 776-77. That issue was not directly addressed in the Fourth Circuit's opinion, but the court held that the officer was entitled to qualified immunity, suggesting that the court assumed the officer had acted under color of state law. *See id.* at 780; *see also Jiggets ex rel. S.J. v. Long*, 510 F. App'x 278, 287 (4th Cir. 2013) (unpublished) (denying qualified immunity to off-duty officers acting as private security guards, without addressing question of state action).

In this case, by wearing their BVPD uniforms and badges, Eller and Brewer certainly presented themselves to the public and the plaintiff as official police officers. The key question, however, is whether the acts at issue here indicate that the officers were acting as police officers rather than private citizens. Eller and Brewer suggest in their briefs that they were attempting to arrest the plaintiff and that he was, in their view, resisting arrest. Although any shopkeeper might detain a suspected shoplifter, making an arrest is a police action. The officers admittedly used their BVPD-issued Taser and handcuffs to secure a suspect who had already left Cabela's building. A jury could find that their government-granted authority as police officers allowed them to do this. As in the *Revene* case, I find that the plaintiff has pleaded sufficient facts to overcome the Motion to Dismiss on the issue of state action.

## B.   *§ 1983: Qualified Immunity.*

Eller and Brewer contend they are entitled to qualified immunity with respect to the § 1983 claims against them. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citations omitted). Qualified immunity involves a two-step inquiry in no particular order: "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right" and

"whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). "Qualified immunity protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006) (internal quotation marks and citation omitted). Qualified immunity is immunity from suit rather than merely immunity from liability; therefore, the question of qualified immunity should be decided before trial if possible. *Id.* But when resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, dismissal on the ground of qualified immunity is not proper. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995).

The Fourth Amendment right to be free from unreasonable seizure encompasses seizures accomplished by excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). A claim that a law enforcement officer used excessive force "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment's reasonableness test is objective. *Id.* at 397. "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). The court must determine whether the officer's

actions were reasonable at the time of the incident, without the benefit of hindsight, and with the understanding that officers must often make split-second decisions in rapidly changing circumstances. *Id.*

When considering an excessive force claim, the court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott v. Harris*, 550 U.S. 372, 383 (2007) (internal quotation marks and citation omitted). "Three factors guide us in this balancing: 1) the severity of the crime at issue; 2) the extent to which the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Lee v. Bevington*, No. 15-1384, 2016 WL 2587380, at *6 (4th Cir. May 5, 2016) (unpublished).

Here, the suspected crime was the relatively minor one of shoplifting. Based solely on his allegations, the plaintiff posed no immediate threat to anyone's safety and could not reasonably be perceived as posing such a threat. There is no indication that the plaintiff was attempting to flee — and he alleges he was not. The allegations in the Second Amended Complaint do not warrant the conclusion that the plaintiff was actively resisting arrest. He merely alleges that when he was

grabbed from behind, he instinctively jerked his arm,[4] looked over his shoulder to see who had grabbed him, and said he had not shoplifted. Accepting the plaintiff's version of events as true, as I must at this stage of the proceedings, the Second Amended Complaint alleges facts that would warrant a finding that forcing Blevins to the ground and the use of the Taser amounted to excessive force and violated the plaintiff's Fourth Amendment right to be free from unreasonable seizures.

The next question is whether, as of last November, the plaintiff's right to be free from tasing or other excessive force in these circumstances was clearly established. I find that it was. The authority cited above predated the events at issue here. Additionally, in *Jiggets*, a decision issued in 2013, the Fourth Circuit affirmed the denial of qualified immunity to off-duty officers acting as security guards in a shoplifting case similar to this one, although that case did not involve a Taser. 510 F. App'x at 287.

In 2015, in a published decision, the Fourth Circuit affirmed the denial of qualified immunity in an excessive force claim where the plaintiff had pulled her arm away when grabbed by an officer and the officer then threw her to the ground and jumped on her. *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015). The court found

---

[4] Even if this could be construed as resisting arrest, "[i]t has long been held in Virginia that where an officer attempts an unlawful arrest, the officer is an aggressor which gives the arrestee the right to use self-defense to resist so long as the force used is reasonable." *Brown v. Commonwealth*, 497 S.E.2d 527, 530 (Va. Ct. App. 1998). If the officers lacked probable cause to arrest the plaintiff, then the arrest was unlawful and he had the right to resist it.

that the "nonviolent misdemeanor offense" that the officer suspected the woman had committed "was not of the type that would give an officer any reason to believe that [she] was a potentially dangerous individual." *Id.* at 102. The court noted that when the officer grabbed the woman, her response "was to instinctively attempt to pull herself from his grasp," and that action did not give the officer reason to believe she was trying to flee. *Id.* at 102-03. Moreover, the woman's "refusal to submit after he threw her down [could not] justify [the officer's] decision to punch Smith repeatedly, breaking her rib." *Id.* at 103. The court also rejected the officer's claim that his use of force was justified because he could not see the woman's hands once she was on the ground, and he therefore could not be sure that she was unarmed. *Id.* at 104-05. The officer "offered no reason for actually *believing* [she] had a weapon other than the fact that she refused to submit to him by giving him her hands." *Id.* at 104-05.

The Fourth Circuit has condemned the use of Tasers except "when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." *Estate of Armstrong ex rel. Lopez v. Vill. of Pinehurst*, 810 F.3d 892, 902-03 (4th Cir.), *cert. denied,* 137 S. Ct. 61 (2016). "Firing a taser 'almost immediately upon arrival' at the scene of an altercation, before an officer 'could . . . have known what was going on,' is, consequently, constitutionally proscribed." *Id.* at 904 (quoting *Casey v.*

*City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007)). "Even noncompliance with police directives and nonviolent physical resistance do not necessarily create 'a continuing threat to the officers' safety'" justifying use of a Taser. *Id.* (quoting *Meyers v. Balt. Cty*, 713 F.3d 723, 733 (4th Cir. 2013)). The court explicitly stated that a person has a "right not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure." *Id.* at 907.

In assessing whether the right violated was clearly established, "[w]e do not require a case directly on point . . . so long as existing precedent [has] placed the statutory or constitutional question beyond debate." *Smith,* 781 F.3d at 100 (internal quotation marks and citation omitted). I find that *Jiggets* and *Smith* are sufficiently similar to this case to have placed the officers on notice that the plaintiff had a constitutional right not to be subject to excessive force under the facts he has alleged. *Armstrong*, though factually distinct, should have given the officers notice that the plaintiff's mere refusal to give them his hands did not justify the use of a Taser. Brewer and Eller suggest that they had reason to believe the plaintiff was armed because he had been looking at ammunition in the store, but the plaintiff alleges that he did not place anything in his pocket and denies that Eller saw him conceal ammunition or anything else. There is no allegation that he had anything on his person that could be perceived as a gun. I therefore conclude

that at this time, Eller and Brewer are not entitled to qualified immunity with respect to the plaintiff's excessive force claim.[5]

To the extent that Blevins asserts a claim of unlawful arrest under the Fourth Amendment, I conclude that Brewer is entitled to qualified immunity as to that claim. Probable cause is an objective standard of probability, justifying arrest when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Whether probable cause existed under given circumstances must be determined by two elements — the suspect's conduct as known to the officer, and the contours of the offense thought to be committed. *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). If a person is arrested when no reasonable officer could believe in light of the contours of the offense that probable cause existed to make that arrest, the officer has violated the clearly established Fourth Amendment right to be arrested only upon probable cause. *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

---

[5] I emphasize that I merely hold that Blevins's excessive force claim is sufficient to survive a motion to dismiss. *See Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) ("A Rule 12(b)(6) motion to dismiss 'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'") (quoting *Republican Party of N .C.,* 980 F.2d at 952). Following discovery, at the summary judgment phase, the evidence may support the application of qualified immunity. At this time, however, the Second Amended Complaint does not support dismissal of Blevins's excessive force claim on that basis.

A Virginia statute states that "[a]ny person who: . . . [c]ommits simple larceny not from the person of another of goods and chattels of the value of less than $200, . . . shall be deemed guilty of petit larceny, which shall be punishable as a Class 1 misdemeanor."  Va. Code Ann. § 18.2-96.  Another statute provides,

> Whoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment, . . . when the value of the goods or merchandise involved in the offense is less than $200, shall be guilty of petit larceny . . . . The willful concealment of goods or merchandise of any store or other mercantile establishment, while still on the premises thereof, shall be prima facie evidence of an intent to convert and defraud the owner thereof out of the value of the goods or merchandise.

Va. Code Ann. § 18.2-103.

Blevins has alleged facts from which a jury could rationally conclude that Eller lacked probable cause to arrest him for shoplifting.  Although Eller stated that she saw Blevins conceal ammunition or a pack of cigarettes in his pocket, Blevins has alleged that she could not have seen him conceal an item because he did not place anything in his pocket.  Construing the allegations in the light most favorable to Blevins, the facts alleged in the Second Amended Complaint do not establish that Blevins was acting suspiciously or that his behavior in the store provided Eller with probable cause to believe he had committed petit larceny.

Brewer's situation, however, is different. In deciding to arrest the plaintiff

for shoplifting, Brewer was relying on Eller's statement that Eller, a police officer,

had personally seen the plaintiff conceal ammunition.

> Although the arrest may ultimately be found to be in violation
> of the Fourth Amendment, . . . the officers who reasonably relied on
> fellow law enforcement are shielded from individual liability. *See,
> e.g.*, *United States v. Hensley*, 469 U.S. 221, 232 (1985) ("In such a
> situation, of course, the officers making the stop may have a good-
> faith defense to any civil suit."); *Liu v. Phillips*, 234 F.3d 55, 57 (1st
> Cir. 2000) ("Where the authorizing officer has made a factual mistake
> but the mistake is not apparent, immunity for the officer who
> reasonably assisted is well settled." (citations omitted)); *Lucas v.
> Shively*, 31 F. Supp. 3d 800, 813–17 (W.D. Va. 2014), *aff'd*, 596 [F.
> App'x] 236 (4th Cir. 2015). This is because qualified immunity
> protects officers who "could reasonably believe that their actions were
> lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

*Rose v. Centra Health, Inc.*, No. 6:17-CV-00012, 2017 WL 3392494, at *4 (W.D.

Va. Aug. 7, 2017). Under Virginia law, an officer may "arrest without a warrant

for an alleged misdemeanor not committed in their presence

involving . . . shoplifting in violation of § 18.2-96 or 18.2-103 or a similar local

ordinance . . . ." Va. Code Ann. § 19.2-81(G).[6] Therefore, I will grant qualified

immunity to Brewer on the plaintiff's Fourth Amendment unlawful arrest claim.

---

[6] Whether this statute runs afoul of the Fourth Amendment is an open question in
the Fourth Circuit. *See United States v McNeill*, 484 F.3d 301, 311 (4th Cir. 2007)
(discussing but not deciding whether officer can constitutionally arrest a person for a
misdemeanor not committed in the officer's presence). The unsettled nature of the law
on this point supports a grant of qualified immunity to Brewer.

## C. Shopkeeper's Privilege.

The defendants all rely upon Virginia's shopkeeper's privilege statute, Va. Code Ann. § 8.01-226.9, to argue that the state law claims against them should be dismissed. The statute states, in relevant part:

> A merchant, agent or employee of the merchant, who causes the arrest or detention of any person pursuant to the provisions of §§ 18.2-95, 18.2-96 or § 18.2-103, shall not be held civilly liable for unlawful detention, if such detention does not exceed one hour, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested or detained, whether such arrest or detention takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, *provided that, in causing the arrest or detention of such person, the merchant, agent or employee of the merchant, had at the time of such arrest or detention probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise.*

*Id.* (emphasis added). "Under Virginia law, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 437 (4th Cir. 2004) (internal quotation marks and citations omitted). "The defendant bears the burden of proving probable cause as an affirmative defense under Section 18.2–105." *Id.*

The immunity granted by the statute is not absolute. *Jury v. Giant of Md., Inc.*, 491 S.E.2d 718, 720 (Va. 1997). "[T]he balance between personal and property rights in § 18.2-105 is achieved by providing immunity from civil liability

based on a wide range of torts, but not extending such immunity in circumstances in which the tort is committed in a willful, wanton or otherwise unreasonable or excessive manner." *Id.*

"Whether probable cause exists depends on what an ordinary prudent person would do in the circumstances and is a question for the jury." *West v. Wal-Mart Stores, Inc.*, No. CIV. A. 97–079–H, 1999 WL 195684, at *3 (W.D. Va. Mar. 24, 1999) (denying defendant's motion for summary judgment based on shopkeeper's immunity). From the facts alleged by the plaintiff, a reasonable jury could conclude that Eller at no point had probable cause to believe that the plaintiff had shoplifted. Reasonable jurors could also find that after the officers had searched the plaintiff and found no Cabela's merchandise, their further detention of him was without probable cause and was unreasonable and excessive. Whether the defendants are entitled to the protection of the shopkeeper's privilege statute depends on disputed facts, credibility assessments, and the jury's determination of what a reasonable officer would have believed under the circumstances. The applicability of the statute therefore cannot be decided on the motions to dismiss, and I will deny them on that ground.

### D. Liability of Cabela's and Respondeat Superior.

Cabela's argues that the actions of the officers cannot be imputed to it because they were acting as police officers and not as agents of Cabela's. Cabela's

further argues that the allegations regarding the actions of Turner and Mullins are too scant to make out any claim against Cabela's.

The Supreme Court of Virginia has on several occasions addressed whether the actions of off-duty officers can be imputed to their private employers. As the following cases show, the inquiry is fact-sensitive. Therefore, this question is not amenable to resolution on Cabela's Motion to Dismiss.

In *Glenmar Cinestate, Inc. v. Farrell*, 292 S.E.2d 366, 370 (Va. 1982), the Supreme Court of Virginia held that a uniformed police officer being paid by a theater to direct traffic at the exit of the theater onto a public road was an independent contractor and not an employee of the theater. Therefore, his negligence could not be imputed to the theater. *Id.* The case had gone to trial, and there was evidence that the police department prohibited officers from working part-time jobs but allowed them to provide traffic control and other help outside of work hours, for which they could receive payment from third parties. *Id.* at 368. The department required them to be in uniform and to work in pairs. *Id.* The theater would call the department to request the services of officers. *Id.* The officers received a flat fee for their services rather than an hourly rate, and they received no instruction from the theater about how to perform their duties. *Id.* One officer testified that he would not have listened if a theater employee had directed him to do his job in a certain way, and that he directed traffic in

accordance with his police training.  *Id.*  Two officers "testified that the direction of traffic is police work and that they considered themselves to be on duty as police officers when at the theatre."  *Id.*

The court stated that an independent contractor, whose actions are not imputed to his employer, works to produce a result, free from control over the method by which he obtains the result.  *Id.* at 369.  One factor to consider in deciding whether a person is an independent contractor or an employee is whether the person would have to obey instructions if they were given.  *Id.*  Lump-sum payment generally points toward the person being an independent contractor, while hourly payment usually indicates an employment relationship.  *Id.*

More specifically, under Virginia law, an off-duty police officer's actions cannot be imputed to his private employer if he was carrying out his duties as a public officer when he committed the acts in question.  *Id.*

> The test is: in what capacity was the officer acting at the time he committed the acts for which the complaint is made?  If he is engaged in the performance of a public duty such as the enforcement of the general laws, his employer incurs no vicarious liability for his acts, even though the employer directed him to perform the duty.  On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant, or employee.

*Id*. at 369-70.

In *Godbolt v. Brawley*, 463 S.E.2d 657 (Va. 1995), an off-duty sheriff's deputy was working as a security guard at a night club. While trying to eject a patron who had been fighting, he shot the patron. The nightclub argued that it could not be held liable because the deputy had been acting in his public function at the time of the shooting. The Supreme Court of Virginia disagreed and overruled the trial court's grant of summary judgment in favor of the nightclub. *Id.* at 661. The court reasoned that there was evidence that the deputy was acting in concert with nightclub personnel in attempting to eject the patron. *Id.* There was also evidence that the patron and his companions had engaged in destructive behavior at the night club. *Id.* The court held that this evidence raised a jury question as to whether the deputy had been acting as an employee of the night club. *Id.*

In *City of Alexandria v. J-W Enterprises, Inc.*, 691 S.E.2d 769 (Va. 2010), an off-duty police officer working at a restaurant pursued customers who had not paid their bill, and one of the customers was ultimately fatally shot. The police department approved the officer's off-duty position, and the department required the officer to wear his police uniform when working at the restaurant. *Id.* at 770. The restaurant paid officers an hourly rate that was governed by an agreement with the city. *Id.* The agreement required officers to enforce all state and local laws while working at the restaurant. *Id.* The police chief approved extra-duty

schedules and the officers to be assigned these duties. *Id.* The restaurant could not reprimand or replace any of the officers working at its premises; it could only complain to the police department. *Id.* No one from the restaurant told the officers to collect on unpaid bills. *Id.* They left it up to the officers to decide whether to pursue patrons who had not paid their bills, although the restaurant could request that the officers not pursue such a customer. *Id.*

Prior to the incident at issue in the case, a server had told the officer that a group of customers had previously left the restaurant without paying, which is a misdemeanor under Virginia law. *Id.* The server told the officer that the patrons were again leaving without paying, and the officer called to two of them as they were exiting the restaurant. *Id.* They looked at him and ran, which led him to believe they had committed a misdemeanor in his presence, providing probable cause for a warrantless arrest. *Id.* He pursued them into the parking lot, where they attempted to drive away, but their car then turned and traveled toward the officer at a high rate of speed. *Id.* at 770-71. He shot at the car and killed the passenger. *Id.* at 771.

At trial, the officer testified that his intention in pursuing the customers was to get them to pay their bill. *Id.* He further testified that he was using his discretion and acting as a police officer. *Id.*

The Supreme Court of Virginia "acknowledged that a person who is a police officer is not precluded from also acting in the capacity of an agent or employee of a private employer." *Id.* at 772. However, "it is a factual question whether the officer was acting as an employee of the private employer or as a public officer enforcing a public duty when the wrongful conduct occurred." *Id.* The court held that the evidence was sufficient to sustain the trial court's factual finding that the officer had been acting as a police officer rather than a private employee when he shot the passenger. *Id.* at 773.

Here, Blevins has alleged facts weighing in both directions. On the one hand, he alleges that the officers wore their BVPD uniforms and badges, used BVPD-issued equipment, and told the plaintiff he was under arrest for shoplifting, a misdemeanor under Virginia law. Blevins alleges that the officers essentially disobeyed Mullins by continuing to detain Blevins even after Mullins told them that the surveillance video showed he had not shoplifted and that they should release the plaintiff. Brewer had requested a police transport vehicle and then sent it back. Blevins alleges that the officers were required to file incident reports with BVPD and initially failed to do so, prompting an internal investigation and that they were eventually directed by their BVPD supervisors to file the reports.

On the other hand, Blevins alleges that the officers consulted with Turner and Mullins, that they decided along with the Cabela's loss prevention employees

to detain him, and that Mullins instructed the officers to release Blevins but tell him he was banned from Cabela's. The officers ultimately complied and did in fact tell Blevins he could not return to the store. Banning a customer from a store is not an appropriate police determination. Blevins alleges that Cabela's required the officers to complete an incident report form. The officers had been selected and paid on an hourly basis by Cabela's, and their work for Cabela's was not governed by any agreement with the BVPD or the City of Bristol. They were subject to the instruction and control of Cabela's and could be terminated by Cabela's.

This array of factual allegations does not lead to a clear-cut answer as to whether the officers were acting in their capacity as police officers or as employees of Cabela's at the time of the alleged incident. I find that whether Cabela's can be vicariously liable for the acts of the officers in this case is a fact question that is best left to the jury. Therefore, I will deny Cabela's Motion to Dismiss on this ground.[7]

---

[7] Blevins' claims against Cabela's may seem inconsistent with his § 1983 claims alleging state action, but a plaintiff is allowed to plead claims in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). The jury may have to determine from the evidence whether Brewer and Eller were acting either as police officers or as employees of Cabela's during the events in question.

### E. False Imprisonment or Wrongful Detention.

Brewer and Eller also argue that Blevins has failed to state a plausible claim of false imprisonment. "False imprisonment is restraint of one's liberty without any sufficient cause therefor." *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966). "To maintain an action for false imprisonment it is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover." *Id.* at 713. "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011).

Brewer and Eller contend that they cannot be liable for false imprisonment because they had probable cause to arrest the plaintiff for shoplifting as well as for obstructing justice and resisting arrest. As to Eller, for the reasons stated above, I find that the existence of probable cause for the initial arrest cannot be determined from the Second Amended Complaint alone and is therefore not amenable to resolution on a Motion to Dismiss. As to Brewer, I find that she did have probable cause to initially arrest Blevins based on Eller's statement that she had seen him shoplifting.

However, the officers continued to detain Blevins following an unfruitful search of his person. Brewer and Eller continued to detain him after Mullins had reviewed the surveillance video, even though Mullins had allegedly instructed the

officers to release Blevins. The allegations in the Second Amended Complaint do not show that Blevins resisted arrest or obstructed justice. I therefore decline to dismiss the false imprisonment claim. Viewing the allegations in the light most favorable to the plaintiff, a jury could find that the officers did not have probable cause for the plaintiff's continued detention.

## F. Assault and Battery.

Brewer and Eller have moved to dismiss the assault and battery claim against them as well. Under Virginia law, "[t]he tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* at 261. "A legal justification for the act being complained of will defeat an assault or battery claim." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009).

Brewer and Eller argue that because their use of force was justified, they cannot be held liable for assault and battery. As noted above, I find that the allegations in the Second Amended Complaint are sufficient to state a claim of excessive force that was unjustified under the circumstances. Therefore, I will deny Eller and Brewer's Motion to Dismiss as to the assault and battery claim.

*G. Defamation.*

Brewer and Eller assert that the Second Amended Complaint fails to state a cognizable defamation claim. "In order to assert a claim of defamation, the plaintiff must first show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Lewis*, 708 S.E.2d at 891. "The plaintiff also must show that the defendant knew that the statement was false, or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based." *Id.* "When a plaintiff asserts that the defendant acted negligently, the plaintiff must further prove that the defamatory statement made apparent a substantial danger to the plaintiff's reputation." *Id.*

Statements of opinion cannot form the basis of a defamation claim. *Id.* The court must determine as a matter of law whether a statement is one of fact or opinion. *Id.* "[T]he court must evaluate all of the statements attributed to the defendant and determine whether, taken as a whole, a jury could find that defendant knew or should have known that the factual elements of the statements were false and defamatory." *Id.*

Brewer contends that her statement on the report form that the plaintiff was under the influence of drugs and alcohol was reasonable because the plaintiff had a pill in his pocket and was acting aggressively and erratically. These allegations,

however, are not contained in the Second Amended Complaint, and I cannot consider them at this stage of the case. Brewer further argues that the statement was simply her opinion. I disagree. Brewer checked the box for "yes" in response to a question asking whether the plaintiff had been under the influence of drugs or alcohol at the time of the incident. That is a statement of fact, not an opinion. Either he was or was not under the influence. Because the statement can be proved true or false, I would find that it was not a statement of opinion and can serve as the basis of a defamation claim.

Eller contends that her statement that Blevins had shoplifted was also an opinion and was not published to third persons. Either the plaintiff shoplifted or he did not. This is an objectively provable or disprovable fact, not an opinion. Blevins alleges that Eller made statements to this effect while standing in a crowded parking lot on the busiest shopping day of the year. At a minimum, the plaintiff's girlfriend was nearby. I find that one could reasonably infer from the Second Amended Complaint that other people heard the statements. Eller failed to review the video surveillance footage prior to making these statements, which would have shown that the plaintiff had not taken anything from the store. I therefore conclude that the allegations would warrant a jury finding that Eller lacked a reasonable basis for her statement that Blevins had shoplifted.

## H. Trespass.

The officers also move to dismiss Blevins's trespass claim based on their search of the vehicle. An unlawful act committed against a person's property, or a wrongful entry onto a person's property, is a trespass. *Va. Marine Res. Comm'n v. Chincoteague Inn*, 757 S.E.2d 1, 8 (Va. 2014). What constitutes a "wrongful" entry has not been well defined in Virginia jurisprudence.

Eller and Brewer first argue that they had a right to search the plaintiff's vehicle as a search incident to a lawful arrest or under the automobile exception to the Fourth Amendment's search warrant requirement. Eller and Brewer further argue that the defendant's trespass claim must fail because he gave consent to the search. I need not decide the applicability of the aforementioned exceptions to the general search warrant requirement because I find that the consent given by the plaintiff and his girlfriend defeats his trespass claim.

"Valid consent is a well-recognized exception to the Fourth Amendment prohibition against warrantless searches." *Gregg v. Ham*, 678 F.3d 333, 342 (4th Cir. 2012) (citation omitted). Consent also relieves an officer of the need for probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In the Fourth Amendment context, "[t]he question of whether the consent was voluntary is determined from the totality of all the circumstances." *United States v. Hatfield*, 365 F.3d 332, 339 (4th Cir. 2004).

From the plaintiff's point of view, his consent was not truly voluntary. He alleges that he only agreed to allow a search of his vehicle because he was handcuffed and Brewer had his keys, so he relented to her request in the hope that she would allow him to leave. While there are conceivably situations in which a search based on coerced consent could amount to a wrongful entry, the facts alleged here do not rise to the level of coercion. The mere facts that the plaintiff was in handcuffs and Brewer was holding his keys do not demonstrate that Blevins's consent was involuntary. Moreover, Blevins alleges that his girlfriend, who was not in handcuffs, also consented to the search.

Blevins also alleges that Brewer falsely told him she had seen him leave the store several times to go to his vehicle, and that these false statements were pretext intended to secure his consent. I do not find that allegation demonstrates coercion. The plaintiff knew he had not gone to his vehicle since arriving at Cabela's, so he knew that the alleged statement by Brewer was false. His desire to prove her wrong by letting her search the vehicle does not render his consent involuntary. I find that Blevins has failed to state a viable trespass claim and will grant the motions to dismiss as to that claim.

## I. Punitive Damages.

Finally, the defendants argue that the plaintiff has failed to allege facts showing he is entitled to punitive damages. A Rule 12(b)(6) motion is often a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law. Punitive damages are available in a § 1983 action when the public official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "[P]unitive damages are categorically available in tort cases . . . brought under Virginia law. . . ." *Blankenship v. Quality Transp., LLC*, No. 1:15CV00019, 2015 WL 4400196, at *2 (W.D. Va. July 17, 2015).

I find that the plaintiff has stated facts which, if true, could warrant the imposition of punitive damages. In particular, the Second Amended Complaint alleges that the officers lied and further violated the plaintiff's rights for the purpose of covering up their earlier mistakes. Such intentional and wanton misconduct could support an award of punitive damages. I will therefore deny the defendants' motions to dismiss the request for punitive damages.

## IV.

For the foregoing reasons, it is **ORDERED** as follows:

1.   The Motion to Dismiss Second Amended Complaint filed by Defendant Cabela's, ECF No. 14, is GRANTED IN PART AND DENIED IN PART.  It is GRANTED as to Count IV and is otherwise DENIED;

2.   Defendants Brewer's and Eller's Motion to Dismiss Pursuant to Rule 12(b)(1), ECF No. 15, is GRANTED IN PART AND DENIED IN PART.  It is GRANTED as to Count V, but only to the extent that Count V asserts an unlawful arrest claim against Defendant Brewer.  In all other respects, the motion is DENIED; and

3.   Defendants Brewer's and Eller's Motion to Dismiss Pursuant to Rule 12(b)(6), ECF No. 17, is GRANTED IN PART AND DENIED IN PART.  It is GRANTED as to Count IV and is otherwise DENIED.

ENTER:  May 11, 2018

/s/  James P. Jones
United States District Judge